FRANK J. CLARK *vs.* CHAUNCEY BROWN.

Worcester. Oct. 1, 1874. — Jan. 12, 1875. COLT & MORTON, JJ., absent.

It is no defence to an action for slander by words imputing larceny of the defendant's property, that the plaintiff, by taking the property in jest, has caused the defendant to believe that the words uttered were true.

In an action for slander by words imputing larceny, the jury were instructed that "the plaintiff must prove that the defendant used the words alleged, or some of them sufficient to charge the crime of larceny as alleged." *Held,* that the defendant had no ground of exception.

Where the declaration in an action of slander charges two distinct utterings of similar words in separate counts, the first of which is a privileged communication, evidence of the words charged in the second count is competent to show express malice under the first count; and the plaintiff may recover under each count for the slander charged therein.

In an action of slander, the defendant may introduce evidence, in mitigation of damages, that the plaintiff's general reputation is bad, and may also show that his gen

eral reputation is bad in respect to the charges made by the alleged slanderous words.

In an action of slander, the jury returned a verdict for $11.75. The defendant's exceptions were overruled, except one as to the exclusion of evidence offered in mitigation of damages. *Held,* that the plaintiff might retain his verdict if he should elect to have it amended to one for nominal damages.

TORT for slander. The words alleged in the first count were (omitting the innuendoes) : " Joseph, I accuse Frank of stealing my iron bar, and I can prove it. By God, I can prove it. He has stole my iron bar, cart pin and ox-yoke. By God, it is no secret, I am going to publish it." The words alleged in the second count were, " By God, Frank stole my iron bar, and I can prove it. There ain't no privacy about it, and I am going to spread it." Answer: 1. A general denial; 2. That the words were true; and 3. That the communications were privileged.

At the trial in the Superior Court, before *Allen,* J., the evidence tended to show that the defendant had, before the speaking of the words, lost his iron bar, ox-yoke and cart-pin, and that he went to the house of the plaintiff's father, where the plaintiff, who was a minor, resided, and there uttered the words alleged in the first count to the plaintiff's father. The defendant's evidence tended to show that he did not use the words alleged, but words substantially different. The evidence tended to show that the words alleged in the second count were uttered to one Vinton, after the occasion above referred to.

The defendant offered evidence tending to show that the plaintiff had admitted that he took the defendant's iron bar, ox-yoke and cart-pin, but did not take them to steal them, but to bother or plague the defendant. The plaintiff controverted this evidence, and denied that he took or admitted the taking the property.

The defendant, upon the question of damages, called witnesses who testified that the plaintiff's reputation for honesty and integrity was bad. The defendant offered to prove by the same witnesses that the plaintiff's reputation in respect to thieving was bad. This evidence was excluded, and the defendant alleged exceptions.

The defendant asked the judge to instruct the jury as follows : " 1. The words of the defendant are to be taken in connection with the extraneous facts, and the question is whether, in connection

with those facts, the words spoken were intended and understood to impute the crime of larceny. 2. If the plaintiff took the defendant's iron bar, ox-yoke and cart-pin without right, with the intent to deprive the defendant of the use of them, the defendant is not liable for saying he stole them. (Or, if the judge should decline to give the last, then) 3. If the plaintiff took without right the iron bar, ox-yoke and cart-pin of the defendant, with intent to deprive the defendant of their use, the defendant is not liable for saying the plaintiff stole them, unless the defendant knew the plaintiff intended to return the articles taken, or only intended to annoy him, without wholly depriving him of the property. 4. Evidence that the defendant, at the time of the utterance of words otherwise privileged, had ill-feeling or ill-temper against the plaintiff, would not tend to prove express malice, unless such ill-will or ill-temper did not arise from the occasion itself, but was wholly independent of the occasion. 5. The words uttered to Vinton, which are relied on as the substantial slander declared on in the second count, are not to be considered as evidence to show malice in uttering the words spoken to the father."

The judge declined to give any of the above instructions, but instructed the jury in substance as follows : " The plaintiff must prove that the defendant used the words alleged, or some of them sufficient to charge the crime of larceny as alleged. The words used are to be taken in their natural and ordinary meaning, unless there was something in the language or circumstances to indicate that a different meaning was intended. The word 'steal' might or might not import a felonious taking, according to the context in which it was used. The jury must find that the defendant intended and was understood, by the words used, to charge the plaintiff with larceny. The occasion of speaking the words charged in the first count was privileged, and the plaintiff must prove express malice in the defendant, to recover on that count. If the words were spoken by the defendant in good faith, believing them to be true, and for the protection or vindication of his rights, they would not be malicious. If the defendant believed them to be true, but uttered them from motives of ill-will toward the plaintiff, and for the purpose of injuring him, they would be malicious. To sustain this count, it must appear that the charge of larceny was made, not for the protection of the de

fendant's rights, but from motives of ill-will toward the plaintiff and a desire to injure him. Evidence of the speaking of similar words on other occasions is competent on the question of malice. The manner of speaking the words on this occasion, though not of itself sufficient to prove malice, is competent to be considered by the jury in connection with the other evidence, so far as it tends to show the motive of the defendant in uttering the words. To justify by proof of the truth of the words, if the defendant charged a larceny, he must prove a felonious taking; if the plain-tiff took the articles in joke or to plague the defendant, not intending to deprive him of the property in them, it would not be larceny."

The jury found for the plaintiff, for $11.75. To all the rulings of the judge, excepting the ruling that the occasion of speaking the words to the father was privileged, and the burden on the plaintiff to show malice, and to the refusal to admit the evidence as to the reputation of the plaintiff in respect to thieving, and to the refusal to give the instructions requested, the defendant alleged exceptions.

*F. P. Goulding*, (*J. M. Cochran* with him,) for the defendant.
*A. J. Bartholomew*, for the plaintiff.

DEVENS, J. It is argued for the defendant that, while one may be justly held responsible for slanderous utterances in respect to an innocent person wrongfully defamed, yet that if such person, by some misconduct of his own, has contributed to produce a belief in the truth of the words thus uttered, he cannot complain of the person expressing it; and that, therefore, if the plaintiff wantonly took the property of the defendant as an idle jest or for the purpose of annoyance, the defendant is not liable for saying that he stole the articles, unless he knew that the plaintiff intended to return them, or only took them thus to annoy him. But in order to justify the defendant in the utterance of words otherwise slanderous, it is necessary that the facts proved by him should be coextensive with the charge; and he cannot protect himself from the consequences of having made it by showing that he believed it to be true, even if such belief was induced by misconduct or impropriety on the part of the plaintiff, which fell short of that which he had seen fit to impute. *Parkhurst* v. *Ketchum*, 6 Allen, 406, and *Watson* v. *Moore*, 2 Cush. 133, 140, are deci-

sive of this point, and the defendant has no ground of complaint in reference to the ruling upon it.

2. The ruling that " the plaintiff must prove that the defendant used the words alleged, or some of them sufficient to charge the crime of larceny as alleged," was a ruling that the plaintiff must show that the charge of larceny had been made against him by proof of the words alleged, or some of the words alleged in the declaration, sufficient to impute to him the crime of larceny, as the plaintiff alleged that it had been imputed to him. To meet its requirements, it was necessary to show by evidence that the charge had been made substantially as the plaintiff alleged it to have been made, so far as the words were concerned. If, therefore, words were set out in the declaration descriptive of the slander, and necessary to identify it, those must have been proved in order to show that the defendant had imputed to the plaintiff the crime of larceny, as the plaintiff alleged that he had imputed it. The rule given by the presiding judge was sufficiently favorable to the defendant. *Doherty* v. *Brown*, 10 Gray, 250. *Payson* v. *Macomber*, 3 Allen, 69, 72.

3. The ruling that the words uttered to Vinton, which constituted the subject matter of the second count, could be used to show malice in the utterance of the words to the plaintiff's father, which were set forth in the first count, was in accordance with the law as repeatedly decided. *Robbins* v. *Fletcher*, 101 Mass. 115. *Baldwin* v. *Soule*, 6 Gray, 321. *Markham* v. *Russell*, 12 Allen, 573. No damages were to be recovered under the first count for the words used to Vinton ; but they furnished evidence of the spirit in which the words set forth in that count were uttered, for the utterance of which alone the plaintiff was there to recover. As no damages were elsewhere recovered for the words uttered to Vinton, there was no reason, therefore, why the plaintiff should not recover for them under the second count. When, however, evidence is given under one count of the utterance of words, which utterance is made the cause of action under another count, it would be highly proper that the jury should be cautioned that the damages under each count should be confined to the injury from the slander charged therein. *Pearson* v. *Lemaitre*, 5 Man. & Gr. 700. The defendant requested much more than this, and the ruling asked by him was properly refused.

4. Upon the question whether the defendant should have been permitted to introduce evidence that the plaintiff's general reputation was bad as to thieving, we are of opinion that its exclusion by the learned judge who presided was erroneous. While there has been much discussion upon the question whether, in actions of this nature, the defendant might show that the general reputation of the plaintiff was bad, and different results have been reached by some of the courts of other states and in England, it is well settled in this Commonwealth that such evidence is admissible in mitigation of damages. *Bodwell* v. *Swan*, 3 Pick. 376. *Stone* v. *Varney*, 7 Met. 86. *Leonard* v. *Allen*, 11 Cush. 241. *Parkhurst* v. *Ketchum*, *supra*. The reason upon which it has been thus held would seem to require the admission of such evidence as to the plaintiff's general reputation in those respects in which it has been assailed by the alleged slander. The action is for injury to the position and standing of the plaintiff among his fellows by the utterance of slanders tending to degrade him in their estimation, and perhaps expose him to punishment; and the defendant may show that the plaintiff's general reputation is already bad, with a view of showing that no serious injury can have been inflicted upon him. When, therefore, the plaintiff alleges this injury to have been occasioned by slanders affecting his character in any particular respect, it would fairly tend to mitigate the damages if it were shown that, at the time of the utterance of the slanders alleged, his general reputation in that respect was already bad. As he is expected to be always ready to defend his general character, so also he should be ready to defend it in reference to that matter wherein he alleges it to have been wrongfully assailed. *Stone* v. *Varney*, *supra*. *Leonard* v. *Allen*, *supra*. *Wright* v. *Schroeder*, 2 Curtis, 548. *M'Nutt* v. *Young*, 8 Leigh, 542. *M'Cabe* v. *Platter*, 6 Blackf. 405. *Sanders* v. *Johnson*, Ib. 50. *Regnier* v. *Cabot*, 2 Gilm. 34, 40.

In *Peterson* v. *Morgan*, *ante*, 350, the offer of the defendant was not to show as an independent fact the general bad character of the plaintiff in those respects which had relation to the charge made against her, but to establish this fact by proof of rumors which had been circulated about the plaintiff as to the offence charged upon her.

Even in some of the courts which have declined to admit evidence of general bad reputation in mitigation of damages, it has been recognized that evidence was admissible of general bad reputation in regard to the point upon which the plaintiff's character had been assailed. *Williston* v. *Smith*, 3 Kerr, 443. *Anthony* v. *Stephens*, 1 Misso. 254.

As the exclusion of this evidence is the only error we find in the conduct of the trial, and as it was admissible only upon the question of damages, the plaintiff is entitled to retain his verdict, if he shall elect to have it amended to one for nominal damages; if he shall not so elect, the *Exceptions are sustained.*